UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14322-Martinez/McCabe

DIANE TIRADO,

    Plaintiff,

v.

ST. LUCIE PUBLIC SCHOOLS,
*a Florida Governmental Entity*

    Defendant.

_____/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Defendant's Motion for Summary Judgment ("Motion"), which was referred to the undersigned by United States District Judge Jose E. Martinez. (DE 17, DE 64). On or about April 25, 2024, the Court extended discovery for an additional 30 days to allow Plaintiff, who is proceeding pro se, to gather additional evidence to oppose this Motion. (DE 66). The Court has now considered all briefing and evidence submitted by the parties and **RECOMMENDS** that the Motion be **GRANTED**.

**I.    OVERVIEW**

This is a civil rights case brought by a former schoolteacher against St. Lucie Public Schools (the "School District") pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the School District fired her in retaliation for constitutionally protected free speech, specifically, her criticism of the school's so-called "zero-grade" policy which instructed teachers to provide a grade of no less than 50% on any student assignment. (DE 1 ¶ 8). The School District argues that summary judgment should be entered in its favor because the undisputed facts show the School District fired Plaintiff, not due to her views on the school's grading policy, but due to numerous complaints

from students, parents, and fellow teachers regarding her unprofessional behavior. As set forth below, the Court agrees summary judgment should be entered.

II. **SUMMARY JUDGMENT STANDARD**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Also, the Court must resolve ambiguities and draw justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. UNDISPUTED FACTS

The record shows the following undisputed facts. Where appropriate, the Court has noted facts that remain in dispute.

**School District Hires Plaintiff**

1. On or about August 10, 2018, the School District hired Plaintiff as an eighth-grade U.S. history teacher at Westgate K-8 ("Westgate") on a probationary period of employment. (DE 1 ¶ 7, Tirado Compl.; DE 27-1 ¶ 14; DE 34-1 at 19:4-8, Tirado Dep.). Westgate's principal, Kristi Parker, made the hiring decision. (DE 34-1 at 18:9-16, Tirado Dep.).

2. During the first five weeks of Plaintiff's employment, school administrators received numerous complaints regarding Plaintiff's job performance. The complaints fell into three categories: (1) complaints regarding failure to follow the "zero-grade policy," (2) complaints regarding failure to follow student Individual Educational Plans ("IEPs"), and (3) complaints regarding other unprofessional behavior.

**Complaints re: Failure to Follow Zero-Grade Policy**

3. During the time of Plaintiff's employment, Westgate had a policy/practice/best practice[1] known as the "zero-grade" policy. (DE 74-15 at 1, Student/Parent Handbook). The zero-grade policy appeared as part of the school grading scale in the Student/Parent Handbook and

---

[1] Plaintiff's complaint intermittently uses the terms "policy," "practice," and "best practice." (DE 1 ¶¶ 8-9). For purposes of this Report and Recommendation, the Court finds it unnecessary to draw a distinction between these terms and will simply use the term "zero-grade policy."

provided: "NO ZERO's – LOWEST POSSSIBLE GRADE IS 50%."  (DE 74-15 at 1, Student/Parent Handbook).

4. On September 12, 2017, Assistant Principal Melissa Hutchins advised Plaintiff of the zero-grade policy at a teacher meeting. (DE 30-1 at 5:7-18, Hutchins Dep.; DE 34-1 at 31:13-14, 46:4-13, Tirado Dep.). At this meeting, after Hutchins explained why the school had a zero-grade policy, Plaintiff expressed her disapproval to Hutchins and likened the policy to "fraud," explaining that "it's considered fraud for me to give a [50%] grade to a kid for nothing." (DE 34-1 at 46:4-13, Tirado Dep.).

5. Thereafter, Plaintiff did not follow the zero-grade policy and gave grades below 50%. (DE 74-15 at 7, Email from Teacher Nancy Small to Tirado about sub-50% grades). Concerned parents reached out to Plaintiff to discuss their children's grades. (DE 74-15 at 2, Email from concerned parent to Tirado).

6. School administrators received complaints about Plaintiff's failure to follow the zero-grade policy. As an example, Assistant Principal Esther Muniz received multiple complaints from parents about grades given to their children, including grades of zero. (DE 29-1 at 10:4-15, Muniz Dep.).

### Complaints re: Failure to Follow IEPs

7. Florida state law requires public schools to develop and follow IEPs for students with exceptional needs. *See generally* Fla. Stat. § 1003.5715.

8. During Plaintiff's period of employment, Jamie Nelson served as Westgate's Support Facilitator in the Exceptional Student Education ("ESE") department. (DE 34-1 at 89:10-11, Tirado Dep.; DE 32-1 at 5:1, Nelson Dep.).

9. Several ESE students in Plaintiff's classes had IEPs that called for the students to receive extra time to complete assignments. (DE 32-1 at 20:4-9, Nelson Dep.). These students complained to Nelson that Plaintiff was refusing to give them extra time as required by their IEPs. (DE 32-1 at 19:2-21:21, Nelson Dep.).

10. As a result of the complaints, Nelson sent Plaintiff an email reminding her that certain ESE students had to be given extra time on assignments according to their IEPs. (DE 32-1 at 22:3-6, Nelson Dep.). In response to the email, Plaintiff told Nelson, in person, that she would not give the ESE students extra time to complete their assignments, stating, "I've given them [the students] all the help and time that they've needed. Time to move on." (DE 34-1 at 139:14-25, Tirado Dep.).

11. Plaintiff admits that she failed to give ESE students additional time to complete assignments as required by IEPs. (DE 34-1 at 95:17-25, 139:14-25, Tirado Dep.).

12. School administrators became aware Plaintiff was not following students' IEPs as a result of student complaints. (DE 32-1 at 20:4-9, Nelson Dep.; DE 29-1 at 16:7-15, Muniz Depo). Assistant Principal Muniz also recalled being told that Plaintiff aggressively confronted Nelson, in front of students, about her reluctance to comply with the IEPs. (DE 29-1 at 25:18-26:13, Muniz Dep.).

**Complaints re: Other Unprofessional Behavior**

13. During the time of Plaintiff's employment, school administrators also received complaints regarding other unprofessional behavior. As an example, a student and parent complained to Assistant Principal Muniz that Plaintiff embarrassed the student in the classroom. (DE 29-1 at 29:22-25, 31:1-14, Muniz Dep.). Specifically, when a student asked Plaintiff why he received a certain grade, Plaintiff used the word "pathetic" to describe his efforts, causing him to

cry at his desk. (DE 34-1 at 24:10-25:1, Tirado Dep.). Principal Parker became aware of this incident after hearing that the student's parents met with Assistant Principal Muniz following the incident. (DE 33-1 at 15:13-25, Parker Dep.).

14. On another occasion, a parent complained to Principal Parker that Plaintiff failed to give a student additional time to complete an assignment when the student's grandfather had been hospitalized in the ICU. (DE 33-1 at 14:17-15:7, Parker Dep.). The student gave Plaintiff a note from his mother asking for an extended deadline in light of the grandfather's hospitalization. (DE 34-1 at 105:19-106:9, 110:9-23, Tirado, Dep.). Plaintiff refused to allow an extension and told the student he had to turn something in despite the grandfather's hospitalization. (DE 34-1 at 110:9-23, Tirado Dep.).

**Termination**

15. On September 14, 2018, the School District terminated Plaintiff's employment. (DE 34-1 at 19:17-19, Tirado Dep.). Principal Parker made the termination decision after receiving feedback from her assistant principals, Muniz and Hutchins, as well as other teachers within the eighth-grade team and history department. (DE 33-1 at 30:20-31:14, Parker Depo.)

16. At her deposition, Principal Parker explained that she made the termination decision, among other reasons, due to Plaintiff causing a "toxic culture" and due to Plaintiff's refusal to follow IEPs. (DE 33-1 at 32:11-25, Parker Dep.). Parker also described a near-daily stream of complaints from staff members and parents occurring at a frequency "more often than [she] had experienced in [her] entire educational career." (DE 33-1 at 14:11-16, Parker Dep.).

17. Assistant Principal Hutchins further explained:

> Q: What was the reason that [Plaintiff] was terminated?
>
> A: There were numerous issues that were coming about with parents concerns, student concerns, not following IEPs

6

>>properly, and creating a hostile environment for her colleagues.

(DE 30-1 at 6:3-8, Hutchins Dep.).

18. The parties have submitted a variety of evidence concerning events that post-dated Plaintiff's termination, including post-termination messages Plaintiff allegedly left at the school, interviews she gave to the press, a laptop computer she allegedly refused to return, and a state court defamation lawsuit she filed and lost. The Court has not considered any post-termination evidence in ruling on this Motion.

## IV. DISCUSSION

By way of this Motion, Defendant argues that summary judgment should be entered because the undisputed facts show Plaintiff cannot prevail on her § 1983 claim as a matter of law. Because Plaintiff has chosen to sue the School District itself (rather than individual employees of the School District), Plaintiff must satisfy two requirements to prevail in this case. First, she must show that one or more of the School District's employees violated her constitutional rights. Second, she must show that the School District can be held liable for the employee's violations under the demanding standard for municipal liability set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court will address each requirement in turn.

### A. Constitutional Violation

As to the first requirement, Plaintiff alleges that Principal Parker violated her constitutional rights by firing her in retaliation for her free speech regarding the zero-grade policy. (DE 1 ¶ 8). The First Amendment protects government employees from some, but not all, restraints on their right of free expression. *See, e.g.*, *United States v. National Treasury Employees Union*, 513 U.S. 454, 465-66 (1995); *Pickering v. Board of Ed.*, 391 U.S. 563, 568 (1968). In *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989), the Eleventh Circuit announced a four-part test to

analyze First Amendment retaliatory discharge claims under § 1983. The *Bryson* test examines (1) whether the employee's speech involves a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient public service, (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government would have made the same employment decision in the absence of the protected conduct. *Id.* at 1565–66. The Court will address each part in turn.

### 1. Matter of Public Concern

As to part (1), the School District raises no argument. The Court therefore assumes the School District concedes that Plaintiff's speech involved a matter of public concern.

### 2. Balance of Interests

As to part (2), the Court must "weigh[ ] the employee's first amendment interests against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering*, 391 U.S. at 568). In determining whether an employee's free speech interests outweigh the public-employer's interest in the effective and efficient execution of its responsibilities, the Eleventh Circuit directed courts to consider "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Id.* at 1567 (cleaned up). Courts decide part (2) of the *Bryson* test as a question of law. *Green v. Finkelstein*, 73 F.4th 1258, 1263 (11th Cir. 2023) (noting that the first two inquiries "are questions of law for the court").

Applying the appropriate standard here, the Court finds that the School District's interests prevail under part (2) of the *Bryson* test. That is to say, the Court finds that the School District's interest in running an orderly school -- with all teachers following the same grading policy --

outweighs Plaintiff's First Amendment interest in expressing her views regarding the zero-grade policy. The Court notes, in this regard, that Plaintiff did not choose to express her views by writing a letter to the editor of the newspaper or by making a speech at the school board meeting. Instead, she chose to voice her protest by *refusing to follow the policy and by giving zeros to students in direct violation of the policy.*

As a general rule, a government employer need not tolerate an employee who, under the guise of free speech, refuses to follow the mandates of the employer. *See Berry v. Bailey*, 726 F.2d 670, 676 (11th Cir. 1984) ("[W]e cannot encourage employees to defy their employers and refuse to perform their duties every time they think that the employer is running the office improperly"); *Hankard v. Town of Avon*, 126 F.3d 418, 422 (2d Cir. 1997) (noting that "the First Amendment's shield does not extend to speech and conduct closely connected with insubordination that impedes an employee's performance of his duties or that interferes with the proper functioning of the workplace") (cleaned up); *Domiano v. Village of River Grove*, 904 F.2d 1142, 1147 (7th Cir. 1990) (affirming summary judgment against a fire chief on his § 1983 First Amendment retaliation claim after he publicly announced he would refuse to follow a newly passed ordinance that limited the fire department's transport of patients to certain local hospitals).

In accord with these authorities, the Court finds that Plaintiff cannot prevail under part (2) of the *Bryson* test. Summary judgment should therefore be entered in favor of the School District and against Plaintiff. Given this conclusion, the Court need not address the remaining factors of the *Bryson* test. Nevertheless, for the sake of completeness and for the benefit of the District Court, the undersigned will do so.

### 3. Causation

Parts (3) and (4) of the *Bryson* test focus on causation. Under part (3), "the fact-finder determines whether the employee's speech played a 'substantial part' in the government's decision to demote or discharge the employee." *Bryson*, 888 F.2d at 1565 (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). Assuming the employee prevails on part (3), the burden shifts to the public employer under part (4) to "prove by a preponderance of the evidence that 'it would have reached the same decision ... even in the absence of the protected conduct.'" *Id.* at 1566 (quoting *Mt. Healthy*, 429 U.S. at 286); *see also Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1557 (11th Cir. 1983) ("Once an [illegal] motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor.").

Parts (3) and (4) necessarily involve issues of intent. As a general rule, "the jury should decide questions of motive and intent behind a government employment decision." *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1560 (11th Cir. 1995). As such, courts should not decide issues of intent at the summary judgment stage unless the record evidence is so one-sided that a reasonable jury could reach only one conclusion. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ("The basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting *Anderson*, 477 U.S. at 252).

Applying the appropriate standard here, the Court finds the record evidence to be so one-sided that a reasonable jury could reach only one possible conclusion as to part (4) of the *Bryson*

test, namely, that even if Plaintiff's free speech played a substantial motivating role in the decision to terminate her, the School District would have reached the same decision even in the absence of the protected speech.  The Court reaches this conclusion for the following reasons, among others:

- Plaintiff had been hired on a probationary period of employment.

- School administrators received multiple complaints concerning Plaintiff's failure to follow student IEPs – a mandatory requirement of state law.

- School administrators received a complaint that Plaintiff called a student "pathetic," causing him to cry in front of other students.

- School administrators received a complaint that Plaintiff refused to allow extra time to complete an assignment for a student whose grandfather had been hospitalized.

- The school principal concluded, in total, that Plaintiff was causing a toxic work culture at the school.

Given all of the above, the Court finds that no genuine issues of material fact remain and that the School District prevails under part (4) of the *Bryson* test.  *See Burleson v. Colbert Cnty.-Nw. Alabama Healthcare Auth.*, 221 F. Supp. 2d 1265, 1279–80 (N.D. Ala. 2002) ("Even if [plaintiff] had established that his candidacy qualified as protected speech, and even if he had presented evidence that his candidacy played a substantial part in the termination of his employment, defendants are still entitled to summary judgment ... [because the] evidence conclusively established that the defendants would have terminated [plaintiff's] position for economic reasons even absent his candidacy.").  For this reason as well, summary judgment should be entered in favor of the School District and against Plaintiff.

**B.** *Monell*

Given the conclusion reached in part IV.A above, the Court need not address the *Monell* aspect of this case. As a necessary part of a valid *Monell* claim against a municipal entity, a plaintiff must first show a valid underlying constitutional violation. In this case, the Court has already concluded that no constitutional violation took place. As such, the Court need not engage in a *Monell* analysis.

**C.     Misc. Arguments**

Finally, the School District has raised several additional arguments that the Court will address solely for the sake of completeness. First, the School District attaches great significance to the fact that Plaintiff brought an unsuccessful defamation lawsuit in state court against numerous school officials. (DE 17 at 1-2). In granting summary judgment against Plaintiff in that case, a Florida state court judge entered an order that noted, "based upon the complaints received [Plaintiff] was terminated." (DE 17 at 3, DE 17-1 at 1). To the extent the School District suggests this sentence has a collateral estoppel effect in this case, the Court disagrees. Collateral estoppel does not apply when the prior proceeding "did not necessarily resolve the [same] civil issue under consideration." *Sconiers v. Lockhart*, 946 F.3d 1256, 1269 (11th Cir. 2020). The prior state court lawsuit involved defamation claims, not a § 1983 retaliation claim based on the exercise of free speech. As such, the Court attaches no legal significance to the prior state court order.

Next, the School District attaches great significance to a report prepared by Aaron Clements, a School District investigator who conducted an extensive investigation following Plaintiff's termination. The report includes a narrative summary of numerous interviews that Clements conducted with administrators, teachers, and students regarding Plaintiff's

12

unprofessional behavior. (DE 18). The School District cites to this report at length in support of this Motion. (DE 68 at 2-3).

The Court has disregarded the Clements report in ruling on this Motion. Setting aside the hearsay problems, the Clements report makes no attempt to distinguish between information school administrators learned *before* Plaintiff's termination versus information Clements discovered *after* Plaintiff's termination. As the Supreme Court noted in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), an ADEA case, courts can utilize so-called "after-acquired" evidence only for limited purposes. In *McKennon*, after an employee was terminated, the employer discovered she had previously removed and copied company records in violation of her job responsibilities. *Id.* at 354-55. The Supreme Court held that when an employer establishes that after-acquired evidence of wrongdoing "was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge," an award of back pay should generally be limited to the period of time "from the date of the unlawful discharge to the date the new information was discovered." *Id.* at 353-64.

Ultimately, then, after-acquired evidence functions as a limitation on damages rather than a bar to substantive liability. *See Mirand v. Walt Disney Parks and Resorts U.S. Inc.*, No. 20-14265, 2021 WL 8874981, *3 (S.D. Fla. Aug. 16, 2021) (noting, in ADEA case, that after-acquired evidence of employee wrongdoing "may limit a plaintiff's damages but is not a complete bar to employer liability"). Because the School District made no effort to educate the Court as to which portions of the Clements report pertain to after-acquired evidence and which portions pertain to before-acquired evidence, the Court has disregarded the report in its entirety and relied solely on deposition testimony regarding information school administrators learned *before* Plaintiff's termination.

V.  **RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

Based on the foregoing, the undersigned **RECOMMENDS** that the Motion (DE 17) be **GRANTED** and that summary judgment be entered in the School District's favor.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Jose E. Martinez.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 17th day of June 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE